Ohio
v.
Woodruff.

## OHIO vs. WOODRUFF.

### INDICTMENT, COUNTERFEITING.

Interest to exclude a witness, must be in the event of a suit.
Whether a bank note is counterfeit or genuine, is a matter of science, and may be proven by other witnesses than the officers of the bank.
Whether it is a fatal variance between the indictment and the note offered in evidence, that the former describes it as a promise to pay " *to* D. Edwin," and the latter is " promises to pay D. Edwin."—Quere.

1ST COUNT.—*For uttering and publishing a counterfeit bank note of the Philadelphia Bank.*

2D COUNT.—*For attempting to pass the same note.*

PLEA.—Not guilty.

POTTER, for the State.

BLOCKSOM and WRIGHT, for the prisoner.

Jeremiah Feazle was offered as a witness. It was asked by Wright, if he was not the person whom the prisoner is charged with intending to defraud ? On its being answered that he was the person, he is objected to as incompetent.

PRESIDENT.—If Feazle has any interest in the event of this prosecution, I am not able to see it. It is said that if the prisoner is convicted, the record in this case will be evidence for him in an action against the prisoner, to recover back the money paid for the note. Admitting this for the present, (although I think that the rule of *res inter alios acta* would apply in such a case,) it does not make out that he is interested to convict the prisoner. It would seem that his interest lies the other way—that it is more for his interest to establish the validity of the note, that it may remain of the value in his hands which he gave for it. If he has any interest, however, it is too uncertain and remote to exclude him. The witness admitted.

After proving that the note produced and described in the indictment, had been passed for a good note, by the prisoner to Feazle, Martin Helman was called, to prove it a counterfeit. He was objected to, by the prisoner's counsel, as not being the best evidence which could be had.

PRESIDENT.—To sustain this indictment it is necessary COLUMBIANA. to prove, to the satisfaction of the court and jury, that this June, 1816. note is false, forged and counterfeit. How is this fact to be Ohio. proven? If the cashier, whose name purports to be signed *v.* to the note, were here and sworn as a witness (admitting him compe- Woodruff. tent for this purpose) how would he determine this note to be a counterfeit? By the paper, by the engraving, by the filling up; in short, by the whole appearance of the bill; it would be, with him, a matter of science merely; even as to his own signature, he must form his opinion in the same way; and even this might be so well imitated that he could only infer it not to be his, from the circumstance of its being affixed to a badly executed note in other respects. Where the person whose name purports to be signed to a promissory note as the maker thereof, is not admitted as a witness to prove the forgery, (as he is not admitted in England, and perhaps would not be here) how, on the principles advocated here, could a forgery be proven? In such cases, the fact of its being a forged note is proven, as a matter of science, by those acquainted with the maker's handwriting. Such evidence, in those cases, is the best the nature of them admits of. The testimony now offered, is of the same kind. If this witness is well acquainted with the paper, engraving, and signatures of the genuine bills of this bank, (as he may be, although he may never have seen the president and cashier write, for he may have gained a very perfect knowledge of the true bills by receiving and paying them at the bank) he is a competent witness to prove whether this bill is a forgery, or not. I take it to be a matter of skill and science, to distinguish the true and 2d East's genuine from the false and counterfeit instruments of this Crown Law, kind, and as such to be proven. 1002.

The witness was admitted.

After proving this note to be a counterfeit Potter offered to read it to the jury.

Objected—That in the indictment it is described as a note in which the promise of payment is "*to* D. Edwin," and in the bill offered, the bank "promises to pay D. Edwin"—the word "*to*" not being between the word "pay" and the letter "D," as in the indictment; which is a fatal variance.

PRESIDENT.—The change of a word, has uniformly been holden to be a fatal variance; but I doubt very much, whether, in any case where the variance does not change the sense and meaning, it ought

to be considered fatal, even though a word be omitted or added. It is very plain that the sense is the same here; but as this objection applies only to the second count, and the authorities *seem* to support it, I am disposed to let it prevail.

By the court.—The note cannot be read on the second count.

The prisoner was convicted on the first count, and sentenced to twelve years confinement in the penitentiary.